UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JERRIS B.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. C19-5293-BAT

**ORDER AFFIRMING THE COMMISSIONER**

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred in discounting certain medical opinions, and discounting her testimony and the lay statements.[1] Dkt. 14 at 1. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

//

---

[1] Plaintiff also argues that the errors listed here led to errors in the residual functional capacity ("RFC") finding, which created error in the step-four finding. Dkt. 14 at 14. This assignment of error is both derivative and also overlooks the Appeals Council's decision, which vacated the ALJ's step-four finding and found Plaintiff unable to perform her past work, and entered new step-five findings based on vocational testimony offered in response to an alternate hypothetical given at the administrative hearing. Tr. 5-6. The Commissioner's briefing defends the ALJ's decision rather than the operative Appeals Council's decision. Dkt. 17 at 16-18. In any event, because Plaintiff's assignment of error in the RFC and step-four findings is entirely enveloped in the assignments of error listed above, the Court need not address them separately.

ORDER AFFIRMING THE COMMISSIONER - 1

# BACKGROUND

Plaintiff is currently 52 years old, has a high school diploma and some college education, and has worked as a carpenter, cook, and deli worker. Tr. 311, 550. In June 2015, she applied for benefits, alleging disability as of November 8, 2013. Tr. 483-95. Her applications were denied initially and on reconsideration. Tr. 410-13, 416-21. The ALJ conducted a hearing on May 3, 2017 (Tr. 306-45), and subsequently found Plaintiff not disabled. Tr. 234-50.

The Appeals Council granted Plaintiff's request for review, and its February 15, 2019 decision finding Plaintiff not disabled is the Commissioner's final decision. Tr. 1-9.

# THE APPEALS COUNCIL'S DECISION

Utilizing the five-step disability evaluation process,[2] the Appeals Council found:

**Step one:** Plaintiff had not engaged in substantial gainful activity since November 8, 2013.

**Step two:** Plaintiff's calcific aortic stenosis of the bicuspid valve, aerotic insufficiency, and aeortic regurgitation post-valve replacement; neurocognitive impairment; degenerative disc disease; and depression are severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Plaintiff can perform light work with the following limitations: she can occasionally climb, balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to extreme temperatures, pulmonary irritants, and hazards. She can frequently handle and finger bilaterally. She should be limited to simple, routine tasks consistent with unskilled work. She is limited to low-stress work, "defined as work requiring work decisions or changes." She may have frequent [contact] with co[]-workers and occasional, superficial interaction with the public.

**Step four:** Plaintiff cannot perform her past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER AFFIRMING THE COMMISSIONER - 2

Tr. 1-9.

**DISCUSSION**

**A.   Medical opinions**

The Appeals Council adopted the ALJ's finding and conclusions regarding the medical opinion evidence. Tr. 5. Plaintiff challenges the ALJ's assessment of three medical opinions, which the Court will address in turn.

**1.   Philip Berger, D.O.**

Dr. Berger, Plaintiff's treating cardiologist, wrote a letter in September 2015, which reads:

> I am the attending cardiologist for [Plaintiff]. She is struggling with neurocognitive dysfunction. The question is whether this has taken its origin from her recent aortic valve replacement and subsequent encephalopathy issues. Her neurologic workup is ongoing.
>
> From a cardiologic standpoint she has made a good recovery from her aortic valve replacement but her neurocognitive issues render her incapacitated. Her formalized neurocognitive workup is being undertaken by Chike L Linton, MD.

Tr. 881. The ALJ gave limited weight to this opinion, finding it inconsistent with (1) the treatment records, which show "essentially unremarkable" neurological examinations; (2) mental status examinations "within normal limits"; and (3) inconsistent with the State agency psychological opinion. Tr. 246.

Because, as noted by the ALJ, Dr. Berger's opinion is inconsistent with the State agency opinion, the ALJ was required to provide specific and legitimate reason to discount it. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). Plaintiff acknowledges that the record does indicate that, as the ALJ noted, she had unremarkable neurological examinations and normal mental status examinations, but Plaintiff emphasizes that her treating providers nonetheless

accepted her subjective description of her neurocognitive problems, and thus the ALJ should not have expressed a view contrary to the treating doctors'. Dkt. 14 at 7-8.

Plaintiff does not fairly summarize the entirety of the record, when arguing that her treating doctors endorsed her self-reported limitations. It is true that Dr. Linton documented Plaintiff's complaints of cognitive problems despite her normal test results. *See* Tr. 805, 810. Dr. Linton did not stop there, however: Plaintiff was referred for further evaluation to attempt to determine the cause of Plaintiff's symptoms as well as their severity. Tr. 810. Plaintiff underwent extensive neurocognitive evaluation in November 2016 that revealed largely normal findings, and the examiner wrote that he was

> particularly struck by the discrepancy between [Plaintiff's] subjective experience/complaints and the results of her objective testing and would wonder about the presence of nonneurological factors in accounting for this. Regardless, results of today's evaluation are not overly concerning for a significant anoxic/hypoxic injury, emerging neurodegenerative condition or severe impairments in cognition that would contraindicate ongoing and successful function.

Tr. 1008-12. In light of the record as a whole, therefore, Plaintiff's argument is not persuasive: Dr. Berger's opinion is indeed contradicted by the record (as found by the ALJ) and the record does not indicate that Plaintiff's providers wholly credited her symptoms despite normal objective findings. Plaintiff has not shown the ALJ's rationale for discounting Dr. Berger's opinion is erroneous and the Court accordingly affirms the Commissioner's determination.

**2.    James Parker, M.D.**

Dr. Parker examined Plaintiff in September 2015 and wrote a narrative report describing her symptoms and limitations. Tr. 871-74. The ALJ summarized Dr. Parker's findings and explained he gave Dr. Parker's conclusions only partial weight because to the extent the opinion can be interpreted to indicate limitations more severe than moderate, it is inconsistent with Dr.

Parker's largely normal mental status examination as well as Plaintiff's appropriate interaction with Dr. Parker. Tr. 245.

The ALJ noted Dr. Parker's opinion is contradicted by the State agency opinion; the ALJ's reasons to discount Dr. Parker's opinion therefore must be specific and legitimate. Plaintiff argues the ALJ's rationale does not meet this standard because Dr. Parker's findings do indeed support his conclusions, specifically regarding Plaintiff's slow pace, depressed mood, flat affect, and memory deficits. Dkt. 14 at 10.

Plaintiff's argument fails. Dr. Parker noted Plaintiff's depressed mood and flat affect during his examination (Tr. 873), but those findings do not pertain to any particular functional limitations and Dr. Parker did not cite them as support for his conclusions. Dr. Parker did cite Plaintiff's slow pace and memory deficits to support his conclusions (Tr. 874), but, as found by the State agency opinion, the extent of the pace and memory deficits documented by Dr. Parker do not support the severe limitations found by Dr. Parker. *See, e.g.*, Tr. 385-86, 388-89. The ALJ also noted Dr. Parker found Plaintiff could maintain concentration, displayed a cooperative attitude with no unusual motor activity, had linear stream of mental activity and normal orientation. Tr. 244.

The ALJ did not err in relying on the State agency consultant's interpretation of Dr. Parker's opinion in the context of other evidence, because the State agency opinion was consistent with other evidence in the record, namely the November 2016 neurocognitive evaluation described above. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the

record."). Here the ALJ specifically found that the agency opinion was consistent with the medical evidence. Tr. 245. Because Plaintiff has failed to show error in the ALJ's reasoning with respect to Dr. Parker's opinion, this portion of the ALJ's decision is affirmed.

### 3. Terilee Wingate, Ph.D.

In November 2015, Dr. Wingate examined Plaintiff and wrote a narrative report describing her symptoms and limitations. Tr. 959-64. The ALJ summarized Dr. Wingate's conclusions and discounted them to the extent that she described limitations more severe than moderate, finding such an opinion to be inconsistent with Plaintiff's normal mental status examinations, normal interaction with providers, ability to follow interviews, cooperative attitude, linear strem of mental activity, and normal orientation Tr. 245. The ALJ also noted Dr. Wingate found Plaitniff would have "difficulty" with various tasks, but did not rate the extent of the difficulty. *Id*. The ALJ further found Dr. Wingate's opinion Plaintiff would need a "quiet" work setting to be unexplained and unsupported. *Id*. Lastly, the ALJ found Dr. Wingate's opinion as to Plaintiff's social and concentration deficits to be inconsistent with Plaintiff's self-report in agency forms, wherein she described no problem getting along with other people, and claimed to have enough concentration ability to watch television and play cards. *Id*. (citing Tr. 546-47).

Plaintiff acknowledges she reported an ability to watch a movie, but contends this does not necessarily mean she has sufficient concentration to complete work tasks. Dkt. 14 at 12. Even if this evidence could have been interpreted another way, Plaintiff has not shown the ALJ's interpretation is unreasonable, and thus has not shown error in the ALJ's inference. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("Where evidence is susceptible of more than

one rational interpretation, it is the ALJ's conclusion which must be upheld. In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.").

Plaintiff also argues the objective medical evidence supports Dr. Wingate's opinion (Dkt. 14 at 12), but again, Plaintiff's summary of the record is selective. Plaintiff does not acknowledge the extensive neurocognitive testing performed subsequent to Dr. Wingate's evaluation showed "the vast majority of [Plaintiff's] neurocognitive scores are either improved or reman stably within normal limits, including verbal learning and memory, visual memory, visuospatial skills, language abilities and most other aspects of attention, concentration and executive functioning." Tr. 1010-11. In light of this and other normal testing cited by the ALJ, the ALJ did not err in discounting Dr. Wingate's opinion as inconsistent with the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record). Plaintiff has not met her burden to show error in the ALJ's rationale.

## B. Plaintiff's testimony

The ALJ discounted Plaintiff's testimony, finding (1) her alleged cardiovascular limitations to be inconsistent with the medical record showing improvement with treatment, (2) her alleged degeneriative disc disease limitations to be inconsistent with the lack of treatment for that condition, and (3) her alleged mental limitations to be inconsistent with evidence of unremarkable mental status examinations and her infrequent report of symptoms. Tr. 241-44.

Plaintiff challenges the ALJ's assessment of her mental limitations, specifically contending the evidence showed she needed reminders. Dkt. 14 at 14. As evidence to support her need for reminders, Plaintiff cites Dr. Parker's description of Plaintiff's slow pace as to stream of the thought and speech, Drs. Berger and Linton's noting of imaging abnormalities and

documentation of Plaintiff's memory problems, and Dr. Wingate's findings with regard to Plaitniff's borderline processing speed index and delayed memory performance. *Id*. (citing Tr. 873, 810, 962-63). As explained *supra*, however, the ALJ did not err in discounting the opinions of Drs. Parker, Berger, Linton, and Wingate, and thus that discredited evidence does not establish error in the ALJ's assessment of Plaintiff's subjective allegations.

**C.      Lay statements**

Plaintiff submitted several lay statements (Tr. 598-610) describing her physical and mental limitations, which the ALJ summarized and discounted as inconsistent with the medical evidence and evidence of Plaintiff's functioning. Tr. 246-48.

As above, Plaintiff contends the ALJ erred in discounting the lay statements regarding Plaintiff's need for reminders. Dkt. 14 at 12-13. Plaintiff again relies on the opinions of Drs. Parker, Berger, Linton, and Wingate as evidence that corroborates, rather than contradicts, the lay statements. *Id*. But, as explained *supra*, the ALJ did not err in discounting those opinions, and cited Plaintiff's good performance on mental status examinations as evidence that contradicts the lay statements. Tr. 246-48. This is a germane reason to discount the lay statements, and thus Plaintiff has not shown error in the ALJ's assessment of the lay evidence. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons for discounting lay testimony included inconsistency with medical evidence, evidence of claimant's activities, and claimant's reports).

//

//

//

//

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 31st day of October, 2019.

BRIAN A. TSUCHIDA
United States Magistrate Judge